**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| LAURIE BECKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 13-1252-CV-W-GAF-P |
| | ) | **ECF** |
| STEVE LARKINS, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONSE TO ORDER TO SHOW CAUSE WHY**
**A WRIT OF HABEAS CORPUS SHOULD NOT BE GRANTED**

**Statement of Custody and Parties**

Petitioner Laurie Becker is incarcerated at the Chillicothe Correctional

Center in Chillicothe, Missouri, due to the sentence and judgment of the

Circuit Court of Pettis County, Missouri. Becker pleaded guilty to five counts

of statutory sodomy in the first degree, three counts of child molestation in

the first degree, and seven counts of statutory rape in the first degree. The

trial court sentenced Becker to concurrent terms life imprisonment on each of

the counts of statutory rape and statutory sodomy and fifteen years on each

of the counts of child molestation. Becker is serving these sentences.

Warden Steve Larkins is Becker's custodian and is the proper respondent. 28

U.S.C. § 2254, Rule 2(a).

1

## Statement of Exhibits[1]

1.      Respondent's Exhibit A is a copy of the post-conviction hearing transcript.

2.      Respondent's Exhibit B is a copy of the post-conviction appeal legal file.

3.      Respondent's Exhibit C is a copy of Becker's brief on post-conviction appeal.

4.      Respondent's Exhibit D is a copy of the State's brief on post-conviction appeal.

5.      Respondent's Exhibit E is a copy of the opinion of the Missouri Court of Appeals, Western District, affirming the denial of post-conviction relief.

## Summary of Argument

Becker raises nine grounds.  Five of these grounds (Grounds Three, Four, Five, Six, and Nine) relate to the claims that Becker properly exhausted in state court.  Becker did not raise the remaining four grounds in state court.  While Becker alleges that she informed post-conviction motion

---

[1] This Court's copies of the exhibits are attached to this response.  Becker should already have copies of these exhibits as they were either filed by Becker through counsel in state court or were served on Becker through counsel in state court.

counsel about some of these claims, none of them are substantive and, as such, Becker fails to show adequate cause to permit review of these claims.

Ground One alleges that, days before the plea, plea counsel threatened to have her declared incompetent to proceed (and had previously threatened that she would never be released if she did pursue a mental disease defense). Ground Two builds on this ground by alleging that she was not properly informed that she would be entering a plea and that she thought that she was going to have a bench trial. Both of these claims are refuted by the record of the plea where Becker was clearly informed that she was entering a plea of guilty and stated that she had not been threatened .

Ground Three, Ground Four, and Ground Six allege that plea counsel was ineffective in failing to investigate, pursue, and present evidence about Becker's mental condition. Ground Nine alleges that the motion court erred in rejecting the testimony of Becker's expert.

Ground Nine is not a cognizable independent ground. Instead, it is cognizable only as part of the argument that the state court unreasonably determined the facts in rejecting Grounds Three, Four, and Six. More significantly Ground Nine is refuted by the record. Contrary to Becker's argument, the motion court did hold a hearing at which her expert testified and at which the State cross-examined the expert. Furthermore, the motion

3

court did not entirely reject the expert's testimony, but, rather, found no prejudice for different reasons.

On the merits of Ground Three, Ground Four and Ground Six, Becker did not present any evidence in state court showing that she had a valid claim of a mental disease or defect due to a traumatic head injury or a valid claim that she was incompetent to proceed. As such, the state courts reasonably found that Becker failed to prove prejudice on these two subclaims.

On the subclaim that plea counsel should have further investigated (including having a mental evaluation of Becker) the possible defense of not guilty by reason of mental disease or defect, the decision on whether to enter such a plea rested with Becker. As the state courts reasonably found that Becker decided that she did not want such a defense, Becker failed to prove prejudice.

On the subclaim that plea counsel should have presented additional mental health evidence at the sentencing hearing, the state courts found that there was no reasonable probability that such additional details would have led to a different sentence. This finding was reasonable in light of the information actually presented at the sentencing hearing.

In Ground Five, Becker alleges that plea counsel should have better explained what would happen if she succeeded with a defense of not guilty by

reason of mental disease. The state courts reasonably found that counsel's explanation was competent.

In Ground Seven, Becker makes a catch-all claim that plea counsel did nothing. This allegation fails to allege any specific act that plea counsel should have performed. As such, it is not adequate to state a claim for relief.

In Ground Eight, Becker alleges that the prosecution engaged in misconduct for not following-up on information about her mental health history. The prosecutor has no constitutional obligation to engage in any particular investigation. To the extent that Becker is attempting to raise a *Brady* claim, she fails to demonstrate that the State suppressed this information or that such information was material.

## Summary of Case

I.   PROCEDURAL HISTORY

The State charged Becker with five counts of statutory sodomy (one count involving B.L., one count involving M.S., and three counts involving A.P.), three counts of child molestation (involving B.L., M.S., and A.P.) and seven counts of statutory rape (three counts involving B.L., three counts involving M.S., and one count involving A.P.). Respondent's Exhibit B, pages 8-11. Becker entered an open plea to all fifteen counts subject to an agreement that all of the sentences would be concurrent. Respondent's Exhibit B, pages 18, 22-23.

5

In her *pro se* post-conviction motion, Becker alleged that plea counsel failed to present evidence of her mental condition and failed to take adequate steps to separate her case from her co-defendant's case. Respondent's Exhibit B, pages 71-73. In her amended post-conviction motion, Becker alleged that trial counsel was ineffective in failing to investigate a mental disease defense or present evidence about Becker's mental health at sentencing. Respondent's Exhibit B, pages 78-84. Becker renewed these two claims on post-conviction appeal. Respondent's Exhibit C.

II. HISTORY OF THE OFFENSE

In 1996 and 1997, Becker lived with T.P. Respondent's Exhibit B, pages 19-20. Becker's children, M.S. and B.L. also lived in that household. Respondent's Exhibit B, pages 19-20. M.S. and B.L. were both under twelve years old during this time frame. Respondent's Exhibit B, pages 19-20.

During the course of that time period, Becker and T.P. engaged in a multitude of sexual activities with M.S. and B.L. under the guise that such activities were part of the practice of their religious faith (supposedly a form of the Wiccan religion). Respondent's Exhibit B, page 20. As part of these practices, Becker inserted a sex toy into the vagina of both M.S. and B.L. to prepare them for having sexual intercourse with T.P. Respondent's Exhibit B, page 20. Becker also touched the genitals of both M.S. and B.L. as part of these "Wiccan" rituals. Respondent's Exhibit B, page 20. T.P. then

6

proceeded to have sexual intercourse with M.S. and B.L. on multiple occasions with the assistance of Becker – more than three times each. Respondent's Exhibit B, pages 20-21.

For part of this time period, T.P.'s daughter, A.P., also stayed with T.P. and Becker. Respondent's Exhibit B, page 21. A.P. was under fourteen at the time. Respondent's Exhibit B, page 21. As part of their rituals, Becker touched A.P.'s genitals, placed her finger in A.P.'s genitals, placed a sex toy in A.P.'s genitals, and engaged in oral sex with A.P. Respondent's Exhibit B, page 21. Becker also assisted T.P. when T.P. had sex with A.P. Respondent's Exhibit B, page 21.

## Default

Before presenting a claim in a federal habeas petition, a petitioner must first properly exhaust state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, an offender must fairly present the "substance" of the claim to the state courts. *Anderson v. Harless,* 459 U.S. 4, 6 (1982). The offender's federal court claim must assert the same factual and legal basis as the state court claim. *Flieger v. Delo,* 16 F.3d 878, 885 (8th Cir. 1996); *see also King v. Kemna,* 266 F.3d 816, 821 (8th Cir. banc 2001). To exhaust a claim, the offender must raise the claim on direct appeal or in state post-conviction proceedings, including on post-conviction appeal. *Flieger,* 16 F.3d at 885; *see also Abdi v. Hatch,* 450 F.3d 334, 338 (8th Cir. 2006); *Osborne v. Purkett,* 411

F.3d 911, 919 (8th Cir. 2005); *Lowe-Bey v. Groose,* 28 F.3d 816, 818 (8th Cir. 1994).

When a petitioner has not properly exhausted state remedies on a claim and the time for doing so has expired, he has procedurally defaulted that claim. *Welch v. Lund,* 616 F.3d 756, 758 (8th Cir. 2010). In this situation, the federal court should not review the claim unless the petitioner can show "cause and prejudice" excusing that procedural default. *Id.* at 760.

Becker only raised two claims in her amended post-conviction motion and in her post-conviction appeal: that counsel was ineffective in not investigating mental disease or defect as a defense to the charges (and for not properly explaining the consequences of such a defense) and that counsel was ineffective in not investigating and presenting additional evidence of mental disease as mitigating evidence at the sentencing hearing. Respondent's Exhibit B, pages 78-84; Respondent's Exhibit C. These claims correspond to Ground Three, Ground Four, Ground Five and Ground Nine (and part of Ground Six – dealing with the defense of not guilty by reason of mental disease) of Becker's petition. As Becker did not include the claims contained in Ground One, Ground Two, Ground Seven, and Ground Eight (and the remainder of Ground Six – dealing with a claim of incompetence) of this petition in state court, she defaulted those claims.

In *Martinez v. Ryan,* 132 S. Ct. 1309 (2012), the United States Supreme Court recognized that ineffective assistance of post-conviction motion counsel could qualify as cause excusing the failure to raise a claim in the post-conviction motion. To demonstrate cause under *Martinez,* a petitioner must show that initial post-conviction counsel was ineffective in failing to raise a substantial claim of ineffective assistance by trial counsel. *Id.* at 1318-19.

Becker asserts ineffective assistance of post-conviction counsel to excuse default of Ground One and Ground Seven. Document 1, pages 6, 19. For Ground Eight, Becker asserts that she personally just discovered this claim. Document 1, page 20. For Ground Two and the competence part of Ground Six, Becker erroneously asserts that she raised these claims on appeal. Document 1, pages 10, 16, 17. However, for the reasons discussed below in addressing the merits of these five claims, post-conviction counsel was not ineffective for failing to raise these five claims as none of them are substantial.

This Court should dismiss Ground One, Ground Two, Ground Seven, Ground Eight, and the part of Ground Six alleging that trial counsel should have asked for a competency exam.

**Claims Raised**

I.      GROUND ONE AND GROUND TWO

      A.     Becker's Claim to this Court

Becker alleges that plea counsel threatened to have her declared incompetent if she insisted on going to trial. Document 1, page 6. Becker further alleges that trial counsel had previously told her that, if she went with a mental disease defense, she would spend the rest of her life in a mental facility. Document 1, page 6. Becker alleges that she was not told sufficiently in advance that she would be pleading guilty and she was actually told that the proceeding was a bench trial. Document 1, page 9.

      B.     Evidence in State Court

At the start of the plea proceedings, the trial court informed Becker that the court was there to take a plea. Respondent's Exhibit B, page 13. When the trial court asked Becker what her plea to those counts was, Becker indicated that her plea was "guilty." Respondent's Exhibit B, pages 18. When the trial court asked Becker whether there was anything other than the plea agreement that was "causing or forcing" Becker to plead guilty, Becker responded "No." Respondent's Exhibit B, pages 18-19. When asked whether she needed more time to talk with counsel before proceeding, Becker again responded "No." Respondent's Exhibit B, page 19.

10

C.    Analysis of Claims

To state a valid claim of ineffective assistance of counsel, an inmate must demonstrate that counsel was incompetent and that such incompetence prejudiced the inmate.  *Strickland v. Washington,* 466 U.S. 668, 687(1984). In the case of an allegedly involuntary plea, to demonstrate prejudice, the inmate must prove that, but for the incompetence, she would have gone to trial.  *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

In determining whether an inmate has a valid challenge to a plea, a defendant's representations during a plea hearing "carry a strong presumption of verity" and operate as a "formidable barrier" in any collateral review.  *Nguyen v. United States,* 114 F.3d 699, 703 (8th Cir. 1999); *see also Tran v. Lockhart,* 849 F.2d 1064, 1068 (8th Cir. 1988).  Becker's statements during the plea refute both Ground One and Ground Two.

Most significantly, her statements refute her claim that she did not know that she was pleading guilty.  Several times during the hearing, the plea court informed Becker that the hearing was a plea hearing, and Becker acknowledged knowing that she was pleading guilty and expressed the desire to plead guilty.  Respondent's Exhibit B, pages 13, 18, 23.

Likewise, her statements during her plea refute her claims that she was coerced into pleading guilty.  The plea court asked Becker whether anybody had made any threats to Becker to get her to plead guilty, and

11

Becker denied that anybody had made such threats. Respondent's Exhibit B, pages 18-19. Later, the plea court asked Becker if she knew of any reason why the plea court should not find that the plea was voluntary and Becker indicated that she did not know any such reason.

Additionally, Becker has not pleaded any facts showing that counsel's representation that a finding of not guilty by reason of insanity could lead to a permanent commitment to the Department of Mental Health was incompetent (as discussed further below on Ground Five). Becker's claim for Ground One that counsel impermissibly threatened her with a competency evaluation contradicts her claim in Ground Six that counsel was legally obligated to obtain a competency evaluation.

This Court should deny Ground One and Ground Two.

## II. GROUND THREE, GROUND FOUR, GROUND SIX, AND GROUND NINE

### A. Becker's Claim to this Court

In Ground Three, Becker alleges that plea counsel was ineffective for failing to investigate a potential defense of a cognitive deficit due to a head injury. Document 1, page 11. In Ground Four, Becker also alleges that plea counsel was ineffective for failing to investigate and introduce evidence of her history of severe mental disorders or have her evaluated. Document 1, pages 14-15. In Ground Six, Becker claims that plea counsel was ineffective for not

changing Becker's plea to not guilty by reason of mental disease or having a mental evaluation performed as he thought that she might not be competent to proceed.  Document 1, page 17.  In Ground Nine, Becker claims that the motion court erred by rejecting the testimony of her expert without holding a hearing or having contrary testimony.  Document 1, page 21.

B.     Cognizability

In Ground Nine, Becker asserts that the motion court erred in rejecting her expert's testimony without holding a hearing.  Document 1, page 21.  Putting aside the fact that this claim is factually wrong – as discussed below – it is not an independent claim of a constitutional violation.  A petition filed under 28 U.S.C. § 2254 is limited to a claim that a prisoner is in custody pursuant to the judgment of a state court in violation of federal law.  28 U.S.C § 2254(a).   While the failure to conduct a proper hearing might be relevant to whether the state court's unreasonably determined the facts on the underlying claim, such a failure is, by itself, a mere infirmity in the state post-conviction proceeding.  "An infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition."  *Gee v. Groose,* 110 F.3d 1346, 1351-52 (8th Cir. 1997).

This Court should dismiss Ground Nine.

C. Evidence in State Court

Becker entered an "open" plea to the fifteen counts pending against her subject to the State's agreement that all of the sentences would run concurrently. Respondent's Exhibit B, pages 22-23.

When asked during the plea whether she suffered from any mental disease that prevented her from understanding the proceedings, Becker replied "No." Respondent's Exhibit B, page 19.

At the sentencing hearing, plea counsel called Becker to testify in her own behalf. Respondent's Exhibit B, page 29. In her testimony, Becker outlined her mental health history. Respondent's Exhibit B, pages 30-31. In particular, Becker stated that she was bipolar. Respondent's Exhibit B, page 31. However, Becker indicated that, when she was with T.P., she had stopped taking medication for that condition because T.P. suggested that she should stop. Respondent's Exhibit B, page 31. Becker indicated that, during this time period when she was not taking her medications, her behavior became erratic. Respondent's Exhibit B, page 32.

Becker also testified about a head injury from her youth, her use of marijuana, and her belief that she may have heard voices at one point in time while using the bipolar medication. Respondent's Exhibit B, pages 32-24.

On cross-examination, Becker acknowledged that, other than her crimes when she was with T.P., she has been able to abide by the law despite

not taking any medications for her bipolar disorder since 1996. Respondent's Exhibit B, pages 35-36.

Plea counsel did not present any additional evidence on Becker's mental history at the sentencing hearing. Respondent's Exhibit B, pages 29-36. However, in his argument, trial counsel did indicate his belief that Ms. Becker had some undiagnosed mental conditions and that her reasoning skills were impaired. Respondent's Exhibit B, pages 42-43.

The motion court held a hearing at which Becker's expert, Dr. A.E. Daniel, testified and was subject to cross-examination. Respondent's Exhibit A, pages 8-74. As part of his testimony, Dr. Daniel discussed the records that he had reviewed and the tests that he had performed. Respondent's Exhibit A, pages 14-25. According to Becker's mental health records, prior to the time of her offenses, Becker had been diagnosed with major depressive disorder and borderline personality disorder. Respondent's Exhibit A, pages 20-25. Some of the doctors who saw Becker before 1996 believed that she suffered from some hallucinations and "delusional" religious beliefs. Respondent's Exhibit A, pages 22-25.

Dr. Daniel suggested, based on the information that he obtained from the police reports and Becker's version of events, that T.P. manipulated Becker. Respondent's Exhibit A, pages 26-30. Dr. Daniel opined that, as a result of T.P.'s manipulation, Becker's actions were not voluntary.

Respondent's Exhibit A, page 30.  Dr. Daniel also theorized that, due to the failure of Becker to take her medications, she may have lapsed into a delusional state at some point during the relationship.  Respondent's Exhibit A, page 31.

Dr. Daniel believed that, during the charge period, Becker suffered from a mental disease or disorder.  Respondent's Exhibit A, page 32-34.   Dr. Daniel, however, consolidated two separate legal issues into one – opining that Becker was either incapable of appreciating the wrongfulness of her conduct or incapable of conforming her conduct to the requirements of the law.  Respondent's Exhibit A, pages 34-35.

Dr. Daniel further testified that he believed that – despite the failure of Becker to take any medications – her mental diseases had been in remission since 2004.  Respondent's Exhibit A, pages 36-37.  However, Dr. Daniel indicated that a relapse was possible.  Respondent's Exhibit A, page 37.

On cross-examination, Dr. Daniel explained that it was not just the mental disease, but also the influence of T.P., that made Becker not responsible for her actions.  Respondent's Exhibit A, pages 42-43.  Dr. Daniel acknowledged that Becker had originally felt that T.P.'s requests were abhorrent and that Becker was the one who ended the relationship with T.P. Respondent's Exhibit A, page 39.  Ultimately, Dr. Daniel agreed that Becker's

mental disease merely made her susceptible to T.P.'s influence. Respondent's Exhibit A, page 43.

In response to questioning from the court, Dr. Daniel agreed that a person who suffers from bipolar disorder also has lucid periods when they are neither in a manic nor a depressive state. Respondent's Exhibit A, pages 45-46. Dr. Daniel further agreed that, during the charge period, Becker made statements that seemed to reflect an understanding of the wrongfulness of her conduct. Respondent's Exhibit A, page 50. Additionally, Dr. Daniel acknowledged that, under the *McNaughton* rule, Becker did know right from wrong. Respondent's Exhibit A, pages 51-52. Lastly, Dr. Daniel acknowledged that he could not show by clear and convincing evidence that Becker was not at risk of reoffending. Respondent's Exhibit A, page 55.

On re-cross, Dr. Daniel again acknowledged that Becker seemed to know that her conduct was wrong, but that Becker was not in control of her conduct. Respondent's Exhibit A, pages 71-72.

Plea counsel testified that he was aware of Becker's mental health history. Respondent's Exhibit A, pages 75-80. Plea counsel also acknowledged that the materials that he received from earlier counsel indicated that possibility of obtaining a psychiatric evaluation. Respondent's Exhibit A, pages 76-77. Plea counsel indicated that he did not investigate Becker's mental health history further or pursue a psychiatric evaluation

because Becker decided that she did not want to pursue a mental disease defense. Respondent's Exhibit A, pages 80-81. Given that, originally, there was an offer for a ten-year sentence, plea counsel advised Becker that she was better taking the plea offer than pursuing a mental disease defense.[2] Respondent's Exhibit A, pages 82-83.

Plea counsel testified that he did not obtain an expert for the sentencing hearing because he did not believe that there was any dispute over Becker's mental health history. Respondent's Exhibit A, pages 88-89. He also testified that he did not believe that such evidence would have made a difference in the outcome of the sentencing hearing. Respondent's Exhibit A, page 90.

Plea counsel further testified that, based on his initial interview with Becker, he believed that Becker met the legal test for competence. Respondent's Exhibit A, pages 94-95.

Becker claimed that, if an evaluation had been done and had come back with results similar to the evaluation done by Dr. Daniel, she would have gone to trial. Respondent's Exhibit A, page 111.

---

[2] Apparently, Becker did not immediately take the offer. Respondent's Exhibit A, page 88. After T.P.'s trial, Becker entered an open plea. Respondent's Exhibit A, pages 95-96.

Case 4:13-cv-01252-GAF   Document 8   Filed 03/13/14   Page 18 of 36

D.    Findings of State Courts

The motion court found that there was no basis in the record for a claim that Becker was incompetent to proceed.  Respondent's Exhibit B, page 89, 95.  The motion court, after summarizing the record, concluded that Becker was not credible in claiming that she would have gone to trial based on the options available at the time that she entered her plea, and that her testimony at the post-conviction that she would have gone to trial represented nothing more than dissatisfaction with the outcome of her open plea.  Respondent's Exhibit B, pages 89-94.  While the motion court noted that Dr. Daniel's testimony would have required the court to instruct on mental disease or defect, the motion court found that the ultimate conclusion on whether Becker was not guilty based on that defect would have rested with a jury.    Respondent's Exhibit B, pages 96-98.  Given the risk that a jury might reject that defense (and the potential punishment that could have been imposed after trial), the motion court found that Becker decided not to pursue such a defense and to enter a plea of guilty.  Respondent's Exhibit B, pages 96-98.  Lastly, the motion court found that, even if Dr. Daniel (or a similar witness) had testified about Becker's mental condition at sentencing there was no reasonable probability of a different sentence.  Respondent's Exhibit B, page 97.

The Missouri Court of Appeals found that, regardless of whether counsel should have further investigated the viability of a defense of mental disease or defect, Becker failed to establish that she would have gone to trial – as she was properly advised of the potential consequences of such a defect and decided to enter a plea rather than pursue that defense. Respondent's Exhibit E, page 6. The Missouri Court of Appeals further found that there was no reasonable probability of a different sentence if additional information about Becker's mental health history had been presented at sentencing. Respondent's Exhibit E, pages 7-8.

E.     Standard of Review/Analysis of Claims

Under 28 U.S.C. § 2254(d), this Court defers to the decision of the state court unless that decision was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court, or involved an unreasonable determination of facts. Both the motion court and the Missouri Court of Appeals correctly stated the standard under established federal law governing claims of ineffective assistance of counsel after a guilty plea – that the inmate must prove that counsel was incompetent and that such incompetence prejudiced the inmate (either in connection with the decision to plead guilty or in connection with the outcome of the sentencing hearing). Respondent's Exhibit B, pages 86, 97;

Respondent's Exhibit E, pages 5, 7.  As such, the issue is whether the state courts reasonably applied that standard or reasonably determined the facts.

Starting with Ground Nine, the record refutes this Ground.  Dr. Daniels did testify at a hearing where the State did cross-examine Dr. Daniels.  Respondent's Exhibit A, pages 8-74.  Becker points to no established federal law that precludes a court from asking questions of a witness during a bench hearing.

Additionally, this claim suffers from two other flaws.  First, the motion court and the Missouri Court of Appeals did not expressly reject Dr. Daniels testimony.  Respondent's Exhibit B, pages 96-98; Respondent's Exhibit E.  Instead, both courts found a lack of prejudice for other reasons.  Respondent's Exhibit B, pages 96-98; Respondent's Exhibit E.

Second, Becker is simply wrong in suggesting that the motion court had to find that Dr. Daniels was both factually and legally credible.  Becker has the burden of proof – both on the claim of ineffective assistance of counsel and on the underlying mental health claims.  *Burt v. Titlow,* 134 S. Ct. 10, 17 (2013); Section 552.030.6, Mo. Rev. Stat.  Because Becker had the burden of proof, the state court was free to find that – based on the entirety of Dr. Daniel's testimony – the portions of Dr. Daniel's testimony supporting Becker were less credible than the portions of that testimony than did not support Becker.

1.    Competency Examination

As part of Ground Six, Becker asserts that trial counsel was ineffective for failing to raise a claim of competence.  Under both Missouri law and established federal law, a claim of competence requires a showing that a defendant suffers from a mental disability and that the mental disability either prevents the defendant from understanding the nature of the proceedings or aiding in her defense.  *Godinez v. Moran,* 509 U.S. 389, 396 (1991); Section 552.020.1, Mo. Rev. Stat.

Trial counsel testified at the post-conviction hearing that, based on his conversations with Becker, she appeared to be competent.  Respondent's Exhibit A, pages 94-95.  Dr. Daniel testified that Becker's mental disease had been in remission since 2004.  Respondent's Exhibit A, pages 36-37.  Becker entered her plea in 2010.  Respondent's Exhibit B, page 6.

Based on this evidence, Becker failed to prove that competent counsel would have requested a competency examination.  Furthermore, Becker failed to prove a reasonable probability that such a competency evaluation would have shown that she was not competent to proceed.

2.    Examination for Defense of Not Guilty by Reason of Mental Disease

For Ground Three, Ground Four and part of Ground Six, Becker alleges that trial counsel should have had a mental evaluation done to support a

defense of not guilty by reason of mental disease. Ground Three focuses on the issue of a head injury. Ground Four and Ground Six focuses on the more general claim of a mental disease.

At the post-conviction hearing, Dr. Daniel did not make any finding that Becker had a head injury that caused cognitive problems and Becker herself denied having such a head injury. Respondent's Exhibit A, pages 8-74, 106-09. As Becker did not present any evidence demonstrating that trial counsel could have found an expert that would have testified that Becker did have such cognitive problems, the state courts reasonable rejected this claim. *Titlow,* 134 S. Ct. at 16-17.

As to the claim in Ground Four and Ground Six related to her bipolar disorder as a potential defense, Becker misses that a plea of not guilty by reason of mental disease or defect is a plea. The ultimate decision of what plea to enter in a case belongs to the defendant. *Cf. Florida v. Nixon,* 543 U.S. 175, 187 (2004) (noting that the decision on whether to plead guilty belongs to the client). As discussed below for Ground Five, counsel competently advised Becker on the pros and cons of a successful plea of not guilty based on mental disease and Becker rejected that defense. As Becker had opted not to pursue this defense, the state courts reasonably found that counsel was competent for not further investigating this defense and that

Case 4:13-cv-01252-GAF   Document 8   Filed 03/13/14   Page 23 of 36

Becker suffered no prejudice from the lack of an evaluation to aid in such a defense.

Furthermore, even if Becker had been interested in such a defense before she entered her plea, Becker's reliance on Dr. Daniel's evaluation is flawed. In his testimony, Dr. Daniel agreed that Becker did not meet the *McNaughton* test for not guilty by reason of mental disease. Respondent's Exhibit A, pages 51-52. Instead, Dr. Daniel based his conclusion on the theory that Becker could not conform her conduct to the requirements of the law. Respondent's Exhibit A, pages 71-72. In making this evaluation, Dr. Daniel's testimony suffered from a flaw of many mental health evaluators who practiced in Missouri in the 1980s – a failure to recognize that, in the 1990s, Missouri changed its legal standard for the defense of not guilty by reason of mental disease.

Before 1993, Missouri defense of not guilty by reason of mental disease included language authorizing such a defense if a defendant was "incapable of conforming his conduct to the requirements of the law." Section 552.030.1, Mo. Rev. Stat. 1986. In 1993, however, Missouri amended its mental disease defense to eliminate that language and limit a mental disease defense to circumstances in which a defendant was incapable of knowing and appreciating the wrongfulness of her conduct – the traditional *McNaughton* test. Senate Bill 180, Eighty-Seventh General Assembly (1993); Section

552.030.1, Mo. Rev. Stat. 1994. Because Becker has the burden of proof on this issue, while there are parts of Becker's testimony that might have required the trial court to instruct the jury, there was no reasonable probability that such a defense would have succeeded. As such, any claim that Becker would have gone to trial after an evaluation is not credible. *Cf. Lockhart,* 474 U.S. at 59 (credibility of claim that would have gone to trial depends upon viability of defense).

    3.    <u>Mental Health Evidence at Sentencing Hearing</u>

Becker's allegations in Ground Three, Ground Four, and Ground Six also cover the failure to have an evaluation done or present medical records at the sentencing hearing. As above, Becker's failure to present any evidence at the post-conviction hearing supporting any claim of a cognitive defect from her youthful head injury defeats any argument that the state courts unreasonably determined the facts or unreasonably applied the law in rejecting that subclaim.

As to her bipolar disorder, the state courts relied on the second prong of *Strickland* – finding no reasonable probability that this additional detail would have altered the outcome of the sentencing hearing. Respondent's Exhibit B, page 97; Respondent's Exhibit E, pages 7-8.

As trial counsel noted, there was not any significant dispute at the sentencing hearing about whether or not Becker had a mental disease.

Respondent's Exhibit A, pages 88-89. The sentencing court, however, declined to find that such history substantially mitigated or excused her serious criminal conduct. Respondent's Exhibit B, pages 53-54. While Dr. Daniel believed that Becker's mental health history significantly contributed to her criminal conduct (making her susceptible to manipulation by T.P.), he conceded several facts on cross-examination that undercut this conclusion. Respondent's Exhibit A, pages 26-30, 39, 43. The state courts did not unreasonably apply federal law in finding that Dr. Daniel's testimony and the records introduced at the post-conviction hearing did not substantially alter the information available to the sentencing court and, thereby, failed to create a reasonable probability of a different sentence.

This Court should deny Ground Three, Ground Four, Ground Six, and Ground Nine.

## III.   GROUND FIVE

### A.     Becker's Claim to this Court

Becker alleges that trial counsel was ineffective for failing to properly advise her about the potential for release if she were found not guilty by reason of mental disease or defect. Document 1, page 16.

### B.     Evidence in State Court

During the post-conviction hearing, plea counsel acknowledged telling Becker that there was a risk that she would never get out if she went with an

mental disease defense. Respondent's Exhibit A, pages 84-86, 100-02. However, plea counsel further testified that he told Becker that a judge would get to determine whether to let her out. Respondent's Exhibit A, pages 85-86, 100. Plea counsel acknowledged that he did not go into detail about all of the procedures surrounding release from confinement after a finding of not guilty by reason of mental disease or defect. Respondent's Exhibit A, pages 87-88, 100.

Becker testified that plea counsel told her that she would never get out if she went with a mental disease defense. Respondent's Exhibit A, pages 105-06. Becker claimed that counsel never told her that there was a chance that she would get released. Respondent's Exhibit A, page 106.

C. Findings of State Courts

The motion court (the judge of which had served as probate judge before becoming circuit judge) noted that it was unlikely that a person in Becker's situation would ever be unconditionally released and would probably not be conditionally released any time soon. Respondent's Exhibit B, page 88. Under these circumstances, the motion court found that plea counsel's discussion of the consequences of a finding of not guilty by reason of mental disease or discussion was competent, and noted that the proposed alternative advice that Becker suggested counsel should have given would have bordered

on being incompetent by creating false expectations in Becker. Respondent's Exhibit B, pages 88-89.

The Missouri Court of Appeals noted that plea counsel advised Becker that a finding of not guilty by reason of mental disease required that the trial court commit the defendant to the custody of the Department of Mental Health, that release from that commitment would ultimately be determined by a judge, and that there was a possibility that Becker might never get released. Respondent's Exhibit E, pages 6. The Missouri Court of Appeals found that this explanation of the consequences of a successful plea of not guilty by reason of mental disease or defect was sufficient to permit Becker to make a decision as to whether or not she wished to pursue such a defense further. Respondent's Exhibit E, page 6.

D.      Standard of Review/Analysis of Claims

Under 28 U.S.C. § 2254(d), this Court defers to the decision of the state court unless that decision was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court, or involved an unreasonable determination of facts. Both the motion court and the Missouri Court of Appeals correctly stated the standard under established federal law governing claims of ineffective assistance of counsel after a guilty plea – that the inmate must prove that counsel was incompetent and that such incompetence prejudiced the inmate (either in

28

connection with the decision to plead guilty or in connection with the outcome of the sentencing hearing). Respondent's Exhibit B, pages 86, 97; Respondent's Exhibit E, pages 5, 7. As such, the issue is whether the state courts reasonably applied that standard or reasonably determined the facts.

Part of the competent representation of a defendant is the provision of competent advice about significant issues in the case to allow a defendant to make a decision as to what pleas to enter. *See Padilla v. Kentucky,* 559 U.S. 356, 370-71 (2010); *Libretti v. United States,* 516 U.S. 29, 50-51 (1995). That requirement does not, however, require counsel to give the client the same level of detail as that involved in a law school lecture on the subject or to use technical terms instead of plain English.

Counsel testified at the post-conviction hearing that he advised Becker about the potential consequences of a finding of not guilty by reason of mental disease or defect. Respondent's Exhibit A, pages 84-86, 100-02. The motion court found that the advice given by counsel accurately summarized those consequences. Respondent's Exhibit B, pages 88-89. The Missouri Court of Appeals found that this summary was sufficient to allow Becker to decide if she needed further details or wished to pursue this defense and that she decided that she did not wish to pursue this defense. Respondent's Exhibit E, page 6. These findings represent a reasonable determination of the facts and a reasonable application of established federal law.

This Court should deny Ground Five.

IV.    GROUND SEVEN

A.    Becker's Claim to this Court

Becker alleges that plea counsel was ineffective because he did not do anything to further her defense.  Document 1, page 19.

B.    Evidence in State Court

The State filed the indictment in this case in February 2010. Respondent's Exhibit B, pages 4, 8-11.  Between February 2010 and June 2010, various attorneys from the local public defender's office represented Becker.  Respondent's Exhibit B, pages 4-5.  In June 2010, Robert Crawford entered his appearance as counsel for Becker.  Respondent's Exhibit B, page 5.

In August 2010, the trial court scheduled the case for trial in December 2010.  Respondent's Exhibit B, page 6.  In preparation for trial, Mr. Crawford filed an answer to the State's discovery request and issued subpoena for three potential witnesses.  Respondent's Exhibit B, page 6.

The week before the date scheduled for trial, Becker entered her plea of guilty to the charges.  Respondent's Exhibit B, pages 6, 12-27.  During the plea, Becker, when asked about all of her attorneys, indicated that she did not have any complaints about any of her attorneys and that all of her attorneys had done all that she had asked them to do.  Respondent's Exhibit

B, pages 24-25. When pressed by the court, Becker indicated that her only complaint was how long the public defenders had taken on the case to get to the plea. Respondent's Exhibit B, pages 24-25.

After the sentencing hearing, Becker indicated that she felt that her counsel's could have said more about her situation. Respondent's Exhibit B, page 58. However, after conferring with counsel, Becker declined to explain this comment further. Respondent's Exhibit B, page 59.

C.    Standard of Review/Analysis of Claims

To state a valid claim of ineffective assistance of counsel, an inmate must demonstrate that counsel was incompetent and that such incompetence prejudiced the inmate. *Strickland v. Washington,* 466 U.S. 668, 687(1984). In the case of an allegedly involuntary plea, to demonstrate prejudice, the inmate must prove that, but for the incompetence, she would have gone to trial. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). On the competence prong, it is necessary for the inmate to allege specific acts or omissions by trial counsel. *Strickland,* 466 U.S. at 691.

Contrary to Becker's allegations, the record refutes her claim that counsel did nothing in support of her case. Document 1, page 19. Before the scheduled trial date, counsel did disclose potential defense witnesses and issue subpoenas for those witnesses. Respondent's Exhibit B, page 6. Furthermore, after Becker opted to plead guilty, counsel did call Becker as a

witness at her sentencing hearing and did make argument on the appropriate sentence. Respondent's Exhibit B, pages 29-36, 42-44.

To the extent that Becker asserts that counsel could have done more, her allegations are too vague and unspecific to meet the requirements of *Strickland.* While pro se petitions are liberally construed, the petition still must sufficiently present a claim. *Miller v. Kemna,* 207 F.3d 1096, 1097 (8th Cir. 2000). To do so, it must state specific, particularized facts which permit this Court to determine from the face of the petition whether it merits further review. *Adams v. Armontrout,* 897 F.2d 332, 334 (8th Cir. 1990).

In this case, the petition lacks those particularized facts. Instead, it merely alleges that counsel was ineffective for failing to call witnesses or present evidence or records without noting any specific witness or evidence or why counsel should have called that witness or presented that evidence (beyond the medical records which is covered by the other claims). As the United States Supreme Court has noted, a petition which merely contains "notice pleading" is insufficient. *Blackledge v. Allisson,* 431 U.S. 63, 76 n. 7 (1976); *see also Lockhart,* 474 U.S. at 60 (finding pleadings insufficient on issue of prejudice).

Because Becker has pleaded no facts specific facts in this claim supporting either a claim of incompetence or prejudice, this Court should deny Ground Seven.

V.    GROUND EIGHT

A.    Becker's Claim to this Court

Becker alleges that the prosecutor engaged in misconduct by not further investigating her mental health history after Becker's daughters disclosed it to police officers.  Document 1, page 20.

B.    Evidence in State Court

At the post-conviction hearing, Dr. Daniel indicated that he had reviewed some of the testimony from T.P.'s trial indicating that B.L. had told police officers that Becker had mental problems and needed help.  Respondent's Exhibit A, pages 65-66.

Plea counsel testified that he attended T.P.'s trial.  Respondent's Exhibit A, page 95.

C.    Analysis of Claims

Becker merges two different claims:  1) that the state had an obligation on its own to investigate her mental health history; and 2) that the State failed to disclose information about her mental health history.  Neither of these claims have merit.

The first claim is based on a misunderstanding of the law.  The State does not have a constitutional obligation to perform any particular investigation in any case.  *Arizona v. Youngblood,* 488 U.S. 51, 58-59 (1988).  This lack of a constitutional obligation is even more significant in the case of

Case 4:13-cv-01252-GAF   Document 8   Filed 03/13/14   Page 33 of 36

a defense of mental disease. Unless the defendant chooses to raise such a defense, the State may not compel a competent defendant to undergo such an evaluation. *See Estelle v. Smith,* 451 U.S. 54 (1981). Likewise, Missouri law limits the State to requesting a competency exam – upon a showing of good cause – unless the defendant pleads a defense of mental disease. Section 552.020, Mo. Rev. Stat.; Section 552.030, Mo. Rev. Stat.

The second claim seems to assert a *Brady* issue. A *Brady* claim has three elements: 1) the existence of exculpatory evidence; 2) the failure of the State to disclose the evidence; and 3) prejudice from the failure to disclose (i.e. whether the evidence was material). *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). Even assuming that a daughter's opinion about her mother's mental health could be exculpatory evidence, Becker fails to show that the evidence was suppressed or that it was material.

Given that this evidence concerned Becker's mental health history, it is unclear how the State could prevent a defendant from knowing about her own mental health history. Even if it were possible, the evidence at the post-conviction hearing indicated that plea counsel was aware of Becker's mental health history and that plea counsel was present at T.P.'s trial where B.L.'s statements about her mother's mental health history were introduced into evidence. Respondent's Exhibit A, pages 65-66, 95. As such, any claim that the State kept plea counsel in the dark about this evidence is meritless.

Finally, for all of the reasons discussed in the previous sections, this evidence is simply not material. Becker opted to plead guilty and forego a mental disease defense because she concluded that her chances were better with a plea of guilty rather than going to trial with a shaky defense. Her disappointment in the sentence imposed does not support the grant of a writ of habeas corpus.

This Court should deny Ground Eight.

## Conclusion

WHEREFORE, for the reasons herein stated, respondent prays that the Court dismiss the petition without further judicial proceedings.

Respectfully submitted,

CHRIS KOSTER
Attorney General

\s\ *Terrence M. Messonnier*

TERRENCE M. MESSONNIER
Assistant Attorney General
Missouri Bar No. 42998

P. O. Box 899
Jefferson City, MO 65102
(573) 751-3321
(573) 751-3825 fax
Direct Phone (816) 889-5031
Terrence.messonnier@ago.mo.gov
Attorneys for Respondent

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system. I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document postage prepaid, this 13 day of March, 2014, to:

Laurie Becker
Inmate Number 1218959
Chillicothe Correctional Center
3151 Litton Road
Chillicothe, Missouri 64601


_/s/ Terrence M. Messonnier_
Terrence M. Messonnier
Assistant Attorney General