# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| LAURIE BECKER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 13-1252-CV-W-GAF-P |
| | ) |
| STEVE LARKINS, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Chillicothe Correctional Center in Chillicothe, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges her 2011 convictions and sentences for five counts of first degree statutory sodomy, seven counts of first degree statutory rape, and three counts of first degree child molestation, which were entered in the Circuit Court of Pettis County, Missouri. Petitioner filed a motion for state post-conviction relief pursuant to Mo. Sup. Ct. R. 24.035, the denial of which was upheld on appeal. Becker v. State, WD75302 (Mo. Ct. App. Aug. 6, 2013) (unpublished opinion); Respondent's Exhibit E.

Petitioner raises nine (9) grounds for relief. Respondent contends that Grounds 1, 2, 7, and 8 are procedurally defaulted and, alternatively, are without merit and that the remaining Grounds 3, 4, 5, 6, and 9 are without merit. Despite this Court's March 25, 2014, Order directing petitioner to reply to respondent's response, petitioner has not filed a reply.

## FACTUAL BACKGROUND

In affirming the motion court's denial of petitioner's Rule 24.035 motion, the Missouri

Court of Appeals, Western District, set forth the following facts:

On February 9, 2010, the state charged Becker with five counts of statutory sodomy in the first degree, three counts of class A child molestation in the first degree, and seven counts of statutory rape in the first degree. On December 10, 2010, Becker appeared in person and advised the court that she understood the charges. The court advised Becker that the range of punishment of the various charges ranged from five years to life imprisonment. Before her guilty plea, it was explained to Becker about entering an open guilty plea. Becker was told that the prosecutor would recommend that all her sentences run concurrently. This meant that there was a possibility of sentences of only ten years. Becker was also instructed that under the open guilty plea that the court did not have to accept the recommendation from the prosecutor that her sentences run concurrently. Furthermore, Becker knew that if she decided to plead not guilty based on a mental disease or defect or an open guilty plea there was a possibility that she could be found guilty by a jury like her co-defendant—which the jury recommended receive eleven consecutive life sentences. After discussing her options with counsel, Becker entered an open guilty plea.

On March 3, 2011, Becker appeared for sentencing. The state argued that Becker be sentenced to life imprisonment because of the nature of the crimes and that the crimes were against three children, two of which were her own children. Becker's counsel argued that ten years would be justice for Becker because of Becker's mental health history and because she had inflicted self punishment on herself. Becker testified at sentencing regarding her mental health history. She testified that although she is much better now, her mental illness caused her to commit the crimes. She also testified that, although at the time of the crimes she did not realize what she was doing was wrong, she was sorry for what happened and that if the situations were to arise again today, it would not happen.

Before announcing the sentence, the court commented on the seriousness of the crimes, that Becker did not appear to be ill, and pointed out that she had made criminal decisions. The court sentenced Becker to life imprisonment for each offense, except for the three child molestation charges in which she received fifteen years each. The court ordered the sentences to run concurrently.

On June 10, 2011, Becker filed a pro se motion pursuant to Rule 24.035. She later, with the assistance of counsel, filed an amended motion alleging ineffective assistance of plea counsel. On April 24, 2012, the motion court held an evidentiary hearing. At the hearing, Becker, Becker's plea counsel, and Dr. A. E. Daniel, a psychiatrist, testified.

Dr. Daniel testified that, in his professional opinion, at the time of the alleged crimes, Becker was suffering from a mental disease or defect, the mental disorders were severe, and Becker's impairment was profound. He also testified that Becker was not capable of appreciating the nature, quality, or wrongfulness

of her actions and was not capable of conforming her conduct to the law when the alleged crimes occurred. Dr. Daniel concluded that Becker's boyfriend, during the period of time the crimes occurred, exercised significant control over Becker and groomed Becker and the children to make them participate in sexual misconduct.

Counsel testified that he was aware of Becker's psychiatric history and her diagnosis of a bipolar disorder. While counsel did not obtain Becker's medical records or have her evaluated by a mental health expert, counsel did discuss a not guilty by reason of mental disease or defect plea with Becker. Counsel did not specifically tell Becker the difference between conditional and unconditional release, but discussed that a judge would determine whether or not she would be released. Counsel testified that if Becker pleaded insanity that there was a real possibility that, from his experience, she would never get out and that the mental hospital was as bad as prison with people screaming nonstop. Becker told counsel that she was not interested in a mental insanity plea.

Becker testified at the hearing that she told counsel of her extensive medical history and her bipolar diagnosis. Becker also testified that counsel told her that he would obtain her mental health records but never did. She further testified that counsel never gave her the opportunity to request a mental evaluation before she pled guilty and that if she had been offered to be evaluated she would have agreed to do so. Becker testified that she was aware of her co-defendant's consecutive life sentences and admitted that she knew that her open plea could result in concurrent or consecutive life sentences. Additionally, Becker testified that counsel advised her not to plea a mental disease or defect defense. She testified that she took his legal advice and decided not to pursue the defense.

After the evidentiary hearing, Becker's Rule 24.035 motion was denied. On May 23, 2012, the Findings of Fact and Conclusions of Law overruling Becker's motion were entered. Becker appeals.

Respondent's Exhibit E, pp. 3-5.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are

3

erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUNDS 3-6 AND 9**

In Ground 3, petitioner asserts a claim of ineffective assistance of trial counsel in that counsel allegedly failed to investigate and submit findings of a defense of a cognitive defect due to a head injury causing petitioner "to have trouble making decisions." Doc. No. 1, p. 11. Respondent contends that, at the post-conviction hearing, Dr. Daniel did not find that petitioner had a head injury and that petitioner herself denied having such a head injury. Doc. No. 8, p. 23. Additionally, respondent argues that petitioner did not present any evidence demonstrating that trial counsel could have found an expert to testify to petitioner's cognitive problems. Id.

In Ground 4, petitioner asserts a claim of ineffective assistance of trial counsel in that counsel failed to submit medical records showing petitioner's history of severe mental disorders and failed to investigate by having her evaluated by a forensic psychiatrist. Doc. No. 1, p. 14. In Ground 5, petitioner asserts a claim of ineffective assistance of counsel in that counsel failed to inform petitioner of conditional and unconditional releases. Doc. No. 1, p. 16. In Ground 6, petitioner asserts another claim of ineffective assistance of trial counsel in that counsel did not petition the court either to have petitioner declared unfit to aid in her defense or to change her plea to not guilty by reason of mental disease or defect. Doc. No. 1, p. 17.

In Ground 9, petitioner asserts that she was denied due process when the motion court contested the validity of her expert without holding a hearing or having contrary testimony. Doc.

---

[1]In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

No. 1, p. 21. Respondent contends that this claim should be dismissed because it is both factually wrong and not an independent claim of a constitutional violation. Doc. No. 8, p. 13. Respondent argues that petitioner's expert, Dr. Daniel, did testify at a hearing where the State did cross-examine him. Doc. No. 8, p. 21. Additionally, respondent asserts that the motion court and the Missouri Court of Appeals did not expressly reject Dr. Daniel's testimony but that, because petitioner had the burden of proof on her claims, the state court was free to find that the portions of Dr. Daniel's testimony supporting petitioner were less credible than the portions of that testimony that did not support petitioner. Id.

The Missouri Court of Appeals, Western District, determined that counsel was not ineffective as follows:

> In Becker's first point on appeal, she argues that her plea counsel was ineffective because counsel failed to investigate her mental illness and potential mental disease or defect defense and failed to properly advise her concerning a potential mental illness defense. Becker contends that if counsel had investigated these issues and properly advised her, she would have refused to plead guilty and would have insisted upon going to trial.
>
> There is no doubt from the record that Becker has a long history of mental illness, dating back before the crimes took place. The record reflects that Becker's counsel was aware of Becker's mental history, and that counsel explained to Becker a possible mental disease or defect defense. Counsel explained to Becker that when a person is acquitted under a not guilty plea based on a mental disease or defect, the person is then committed to the director of the Department of Mental Health for custody. Section 552.040.2, RSMo. (2000). Counsel advised Becker that, from Counsel's experience, there was a possibility that Becker might never be released once admitted to a mental health facility. Counsel informed Becker that release from such mental health facilities is ultimately determined by a judge. Counsel and the court informed Becker prior to her plea of guilty that the range of punishment for her various charges included five years to life imprisonment.
>
> Despite having this information, Becker argues that her plea counsel did not provide her with enough information to make an informed decision about a potential mental disease or defect defense because he failed to tell her about conditional and unconditional institutional releases once in Department of Health custody. However, although Becker's counsel did not specifically mention the

difference between conditional and unconditional release, he highlighted the gravity of the offenses for which Becker was charged, advised her of the possibility of no release based on his experience, but did not tell her that release was impossible. To the contrary, she was informed that a judge would make a determination as to release.

The record reflects that Becker was adequately informed, prior to entering her guilty plea, of the ramifications of pursuing a mental disease or defect defense and of pleading guilty. Becker voluntarily chose to plead guilty. Thus, Counsel's recitation of the statutory conditional and unconditional release language was not requisite for Becker to make an informed decision regarding pursuit of a mental defense or pleading guilty. Moreover, there is no evidence in the record, nor does Becker argue, that her plea was not voluntary. Point one is denied.

In her second point on appeal, Becker argues that the circuit court clearly erred in overruling her Rule 24.035 motion because her counsel failed to present mitigating evidence at sentencing about her significant history of mental illness. Becker contends that had this evidence been presented there is a reasonable probability that Becker would have been sentenced to less time in prison. We disagree.

Becker argues that there was substantial mitigating evidence that her counsel could have presented during sentencing regarding her history of mental illness. The mitigating evidence included expert testimony, like that given by Dr. Daniels at the evidentiary hearing, and numerous medical records. Becker contends that had this evidence been presented at sentencing there is a reasonable probability that her sentence would have been lower. The record, however, reflects that the court was presented mitigating evidence regarding Becker's mental health issues. Becker testified regarding her extensive history of mental illness, and the prosecutor did not contest Becker's mental health history and diagnosis. The court, fully aware of Becker's mental history, chose to give Becker concurrent life sentences, rather than consecutive, because Becker chose to take responsibility for her conduct.

Based on our review of the record, we find no reasonable probability that Becker's sentence would have been different had the court been provided with additional information regarding her mental health issues. Therefore, Becker was not prejudiced. Point two is denied.

We conclude, therefore, that the circuit court did not err in denying Becker's Rule 24.035 post-conviction relief motion after an evidentiary hearing. Counsel was not ineffective because counsel was sufficiently aware of Becker's mental history illness and properly advised Becker of her potential mental disease or defect defense. Further, at sentencing the court was fully aware of Becker's mental health history, and even if the court had been given additional information regarding her mental health issues, there is no reasonable probability that

> Becker's sentence would have been lower. We affirm the circuit court's judgment.

Respondent's Exhibit E, pp. 6-9.

In <u>Strickland</u>, the Court held that, in order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in <u>Strickland</u>." <u>Owens v. Dormire</u>, 198 F.3d 679, 681 (8th Cir. 1999), <u>cert. denied</u>, 530 U.S. 1265 (2000). To show prejudice, petitioner must establish with "reasonable probability" that she would not have entered a guilty plea and would have insisted on going to trial had counsel been effective. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 787 (2011) (quoting <u>Strickland</u>, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687.

Petitioner's representations at the guilty plea hearing carry a strong degree of verity and pose "a formidable barrier in any subsequent collateral proceedings." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73 (1977). In applying the standard articulated in <u>Strickland</u>, petitioner's trial counsel was not ineffective because the ultimate decision to plead guilty was petitioner's to make, so counsel's failure to do more than inform and advise petitioner of the mental disease or defect defense was not an unreasonable trial strategy. The Missouri Court of Appeals, Western District,

7

found that petitioner's counsel made a reasonable strategic decision not to produce additional information regarding petitioner's mental health issues because there was no reasonable probability that petitioner's sentence would have been lower, and such strategic decisions are virtually unchallengeable, especially under 28 U.S.C. § 2254. Strickland, 466 U.S. at 690-91; Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009); see also Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987) ("[T]he courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed in the proceedings to that point, and his best judgment as to the attitudes and sympathies of judge and jury."). "[I]t is not enough to complain after the fact that [petitioner] lost, when in fact the strategy at trial may have been reasonable in the face of an unfavorable case." Id. (citation omitted).

The statutory presumption set forth in Section 2254(e)(1) "is particularly proper [in cases involving the voluntariness of a guilty plea] in light of the state trial court's ability to judge the defendant's credibility and demeanor at the plea hearing and the fact that '[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea.'" Weeks v. Bowersox, 119 F.3d 1342, 1352 (8th Cir. 1997) (quoting Blackledge, 431 U.S. at 71).

Petitioner has failed to proffer clear and convincing evidence that her guilty plea was not voluntary, knowing, and intelligent. See Hunter v. Bowersox, 172 F.3d 1016, 1022 (8th Cir. 1999), cert. denied, 528 U.S. 1140 (2000). The Missouri Court of Appeals, Western District, affirmed the motion court's finding that both the court and trial counsel were aware of petitioner's history of mental illness, that counsel informed petitioner of the ramifications of a plea of not guilty based on mental disease or defect, and that, ultimately, petitioner chose to

plead guilty. Furthermore, petitioner failed to demonstrate prejudice because there was no reasonable probability that the outcome of the trial would have been different, in that the state court was aware of petitioner's mental history and chose to give her concurrent life sentences, rather than consecutive. Because the state court's determinations were not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Grounds 3-6 and Ground 9 will be denied.

## **PROCEDURALLY DEFAULTED GROUNDS 1-2 AND 7-8**

In Ground 1, petitioner claims that her guilty plea was involuntary and coerced because defense counsel "told her 4 days before her open plea if she continued with her desire to go to trial he would have her declared unable to aid in her defense." Doc. No. 1, p. 6. Petitioner claims counsel previously told her that, if she was committed to a mental facility, she would spend the rest of her life there. Id. In Ground 2, petitioner asserts that she never was "properly informed she would plead guilty until seconds before she approached the podium at her open plea proceedings." Doc. No. 1, p. 9. Petitioner claims that she proceeded under duress because she was threatened that if she did not go forward she would be declared unfit and locked away for the rest of her life. Id. Respondent argues that, in state court, petitioner did not raise either of these grounds and that, furthermore, both of them are refuted by the record of the plea where petitioner "was clearly informed that she was entering a plea of guilty and stated that she had not been threatened." Doc. No. 8, pp. 2-3.

In Ground 7, petitioner asserts a claim of ineffective assistance of counsel in that counsel failed to offer a legal defense. Doc. No 1, p. 19. Petitioner claims counsel called no witnesses to support petitioner, made no motions, submitted no evidence, and "made no petitions." Id.

9

Respondent contends that, contrary to petitioner's allegations, the record refutes her claim that counsel did nothing in support of her case. Doc. No. 8, p. 31. Respondent states that counsel did disclose potential defense witnesses and issue subpoenas for those witnesses and, additionally, even after petitioner opted to plead guilty, that counsel called petitioner as a witness at her sentencing hearing. Doc. No. 8, pp. 31-2.

In Ground 8, petitioner asserts a claim of prosecutorial misconduct in that the prosecutor failed to submit and investigate findings of severe mental illness as told to police officers by petitioner's daughter. Doc. No. 1, p. 20. Respondent argues that the State does not have a constitutional obligation to perform any particular investigation in any case, more significantly in the case of a defense of mental disease. Doc. No. 8, p. 33-4. Respondent asserts that plea counsel was aware of the evidence of petitioner's mental health history as testified to by petitioner's daughter at her co-defendant's trial. Doc. No. 8, p. 34. Additionally, respondent contends that, if petitioner is asserting a claim under Brady v. Maryland, 373 U.S. 83 (1963), petitioner fails to show that this evidence was suppressed or that it was material. Id.

Respondent argues that, because petitioner did not include the claims in Grounds 1, 2, 7, and 8 of this petition in state court, petitioner procedurally defaulted these claims. Petitioner asserts ineffective assistance of post-conviction counsel to excuse default of Grounds 1 and 7. Doc. No. 1, pp. 6-7, 19.

If petitioner intends to assert an independent claim of ineffective assistance of post-conviction counsel, petitioner's claim is not cognizable in federal habeas. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); see also Christenson v. Ault, 598 F.3d 990, 995-96 (8th Cir. 2010) ("There is no federal

10

constitutional right to the effective assistance of post-conviction counsel.") (citation omitted).

If petitioner intends to assert a claim that post-conviction counsel was ineffective for failing to raise a claim that plea counsel was ineffective for failing to argue, "[a] habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." Id.

Petitioner procedurally defaulted her claims for relief by failing to assert the claims in her post-conviction motion or on appeal from the denial of her Rule 24.035 motion. See Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997) (recognizing that failure to present claims in the Missouri courts at any stage of direct appeal or post-conviction proceedings is a procedural default), cert. denied, 523 U.S. 1010 (1998). A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Petitioner has not demonstrated cause or prejudice for defaulting Grounds 1, 2, 7, and 8.

Petitioner fails to establish that post-conviction counsel's failure to present the underlying ineffective assistance of plea counsel claim in petitioner's amended post-conviction motion rises to the level of ineffective assistance of counsel or that the underlying claim has merit, especially considering petitioner's representations at the plea hearing. Martinez v. Ryan, 133 S. Ct. 1309, 1318 (2012) (holding that petitioner must make a showing that post-conviction counsel was

ineffective under the standard set forth in Strickland and must demonstrate that the underlying claim has merit); Strickland, 466 U.S. at 687-88. Consequently, petitioner fails to establish cause for the procedural default of her underlying ineffective assistance of plea counsel claim.

Petitioner also has failed to show that a fundamental miscarriage of justice will result if her defaulted claims are not considered. See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (petitioner must present new evidence that affirmatively demonstrates that [s]he is actually innocent of the crime for which [s]he was convicted in order to fit within the fundamental miscarriage of justice exception), cert. denied, 549 U.S. 1036 (2006). As a result, Grounds 1 and 7 are either not cognizable in federal habeas, or in addition to Grounds 2 and 8, are procedurally defaulted and will be denied.

## **CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is denied, the issuance of a certificate of appealability is denied; and this case is dismissed with prejudice.

/s/ Gary A. Fenner_____
GARY A. FENNER
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: June 12, 2014.